```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```
Bryan A. Rush                    :

    Plaintiff                :

    v.                       : Case No. 3:16-cv-00366

A Pocono Country Place, Inc.,:(Judge Richard P. Conaboy)
Kurt Cummings and Cassandra
Webster                          :

    Defendants               :
_____

**Memorandum**

**I.   Background.**

We consider here Defendants' Motion for Summary Judgment (Doc. 25). Defendants are A Pocono Country Place, Inc., which operates a gated residential community in Monroe County, Pennsylvania, and two individuals, Kurt Cummings and Cassandra Webster, both of whom work for A Pocono Country Place, Inc. The Plaintiff, Bryan Rush, also worked at A Pocono Country Place as a patrol officer before he was fired in March of 2015. The circumstances surrounding Rush's termination are at issue because he alleges that the reasons for which he was fired were pretextual and that he was actually a victim of racial discrimination and/or unlawful retaliation. The parties have briefed the motion and it is now ripe for disposition (Docs. 27, 30, and 33).

1

**II. Undisputed Facts.**[1]

1. A Pocono Country Place ("Pocono") is a gated, planned residential community in Tobyhanna, Pennsylvania.

2. Residents of Pocono pay quarterly fees which cover the cost of, inter alia, a Public Safety Department.

3. The Chief of Police at Pocono, Defendant Cummings, is an African-American male.

4. Defendant Cummings has the authority and discretion to hire, fire, and discipline employees of the Pocono Public Safety Department.

5. The Human Resources Manager at Pocono, Defendant Webster, is an African-American female.

6. Plaintiff Rush, a caucasian male, is a former patrol officer at Pocono.

7. During the time Plaintiff Rush worked as a patrol officer at Pocono he was a smoker.

8. The Public Safety Department at Pocono includes patrol officers.

9. Patrol officers are responsible for patrolling and maintaining the safety of the Pocono community and, where necessary, seeking the assistance of the

---

[1] The "Undisputed Facts" are derived from a cross-reference of Defendants' Statement of Undisputed Facts (Doc. 26) with Plaintiff's responses thereto (Doc. 30-5 at 31-54).

regional police in Tobyhanna, Pennsylvania.

10. Other positions in the Pocono Safety Department include: (1) gate guard; (2) dispatcher; (3) corporal; (4) assistance manager or lieutenant; and (5) public safety manager or chief.
11. All employees of the Pocono Public Safety Department are subject to and provided copies of (1) the Employee Handbook and (2) the Pocono Policy and Procedure Guide.
12. Plaintiff Rush was hired as a patrol officer at Pocono on January 15, 2014 and continued to hold this position until his termination on March 20, 2015.
13. Plaintiff Rush received copies of the Employee Handbook and Policy and Procedure Guide shortly after being hired.
14. For most of the time Plaintiff Rush was employed at Pocono, Defendant Cummings was Chief of the Public Safety Department.
15. The Employee Handbook sets forth a policy dealing with the use of tobacco products by Pocono employees on the work site.
16. The Employee Handbook explicitly provides in bold

type that "Smoking is prohibited in Association vehicles."

17. The Employee Handbook contains a notification that violations of the smoking policy "may result in disciplinary action, up to and including discharge."

18. The Policy and Procedure Guide specifically states that patrol officers shall not "smoke or use tobacco products" while on duty.

19. The Policy and Procedure Guide prohibits patrol officers from engaging in high speed chases within the Pocono community.

20. The Policy and Procedure Guide states that a patrol officer is responsible for the proper care of departmental property and equipment which is assigned to them as well as reporting all problems with such vehicle on the daily patrol log.

21. Plaintiff Rush was familiar with the Policy and Procedure Guide and the Employee Handbook and had read both documents "cover to cover".

22. During the early part of 2015, Pocono experienced problems with the employees of the Public Safety Department smoking outside designated areas of the community.

23. Following a managers meeting that was conducted on

4

March 13, 2015, Defendant Webster sent a memo to all Pocono employees reminding them of the Public Safety Department's no smoking policy and reiterating that violations of the policy could result in disciplinary action including discharge.

24. The smoking memo was posted on an informational bulletin board within the Public Safety Department.

25. Plaintiff Rush personally received a copy of the smoking memo.

26. On March 16, 2015, three days after publication of the smoking memo, Plaintiff Rush was working as a patrol officer at Pocono.

27. Plaintiff Rush worked the 8:00 p.m. to midnight shift on March 16, 2015 and was assigned at that time to Public Safety Vehicle "PS-5".

28. Prior to assuming control of Vehicle PS-5 on March 16, 2015, Plaintiff Rush did not identify any issue concerning the smell of smoke within that vehicle.

29. Plaintiff Rush has acknowledged that he was responsible for the vehicle to which he was assigned during his shift.

30. All public safety vehicles are subject to random inspection by the Pennsylvania Department of Health.

31. The smell of cigarette smoke could result in the

loss of Pennsylvania Department of Health certification for a vehicle.

32. All public safety vehicles at Pocono have "no smoking" signs posted on the dash.

33. Pocono's public safety vehicles carry oxygen and other emergency medical equipment that does not mix well with cigarette smoke.

34. Patrol officers at Pocono are barred from smoking in or around public safety vehicles.

35. After Rush completed his shift on March 16, 2015, his patrol vehicle was left in the parking lot outside the Public Safety Department offices.

36. The next patrol officer to use Vehicle PS-5 was Robert Smith who assumed control of that vehicle on March 17, 2015 at 8:00 a.m.

37. During his routine inspection of the vehicle in question on the morning of March 17, 2015, Robert Smith detected the odor of cigarette smoke.

38. According to another patrol officer with whom Robert Smith spoke, the smell of cigarette smoke was so strong that he had to open the windows to air the vehicle out.

39. Officer Smith wrote a memo to Defendant Cummings on the morning of March 17, 2015, which read as

6

follows: "on March 17, 2015 while performing my vehicle inspection of public safety patrol vehicle PS-5, I could sense a smell of cigarette smell inside the vehicle. According to the dispatcher vehicle log, the last officer using Patrol Vehicle PS-5 was officer Rush on 3-16-15. Per Chief Cummings, I (Ofc. Smith) was requested to type a supplement report pertaining to this incident."

40. After receiving Smith's report, Defendant Cummings inspected the vehicle in question on the morning of March 17, 2015 and noticed the smell of cigarette smoke inside the vehicle.
41. The stated reason for Plaintiff Rush's termination according to his discharge paperwork was "smoking in QRS Patrol Vehicle."
42. Plaintiff Rush sent an email to Defendant Webster complaining about Defendant Cummings' treatment of him on March 20, 2015.
43. At the time Plaintiff Rush sent that email he was aware that he was being investigated due to the smell of cigarette smoke in Vehicle PS-5.
44. Plaintiff Rush maintains that Defendant Cummings is a racist who has disproportionately favored minority employees vis-a-vis caucasian employees.

45. Plaintiff Rush acknowledges that Defendant Cummings has disciplined employees of all races but maintains that minorities have habitually received less punitive discipline than caucasian employees.
46. Plaintiff Rush never had any authority to discipline other employees while working at Pocono.
47. Plaintiff Rush has asserted claims of race discrimination in his complaint.
48. Defendants filed a timely answer to the complaint, the parties engaged in discovery, and Defendants filed the instant motion for summary judgment in timely fashion.

## III. Legal Standard Governing Summary Judgment Motions.

Summary Judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact" Federal Rules of Civil Procedure 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there would be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for

the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d. Cir. 2006)(citing Anderson at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the non-moving party. Conoshenti v. Public Service Electric and Gas, 364 F.3d 135-140 (3d. Cir. 2004)(citations omitted).

The initial burden is on the moving parties to show an absence of a genuine issue of material fact. Celotex Corp., v. Catreet, 477 U.S. 317, 330 (1986)(citations omitted). The moving party may meet this burden by "pointing out to the District Court that there is an absence of evidence to support the non-moving parties' case when the non-moving party bears the ultimate burden of proof." Id. At 335. The non-moving party may not rest on the mere allegations contained in his or her pleadings, but is required by the Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. at 334.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. See Matsushita Electric Industries, LTD. V. Zenith Radio

9

Corp., 475 U.S. 574, 587 (1986); see also Abramson v. William Paterson College of New Jersey, 260 F.3d 265-267 (3d. Cir. 2001)(citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 at n.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be at issue, or when conflicting evidence must be weighed, a full trial is necessary.

**IV. Discussion.**

Plaintiff Rush has pled two claims: (1) retaliation for engaging in protected activity pursuant to Title VII; and (2) racial discrimination pursuant to 42 U.S.C. § 1981.[2] The elements that must be proved to maintain retaliation and discrimination claims in our circuit are very similar. See Schurr v. Resorts International Hotel, Inc., 196 F.3d 486, 498-99 (3d. Cir. 1999). Nevertheless, we shall discuss them separately.

A prima facie case of retaliation involves a showing

---

[2] The Court notes that Plaintiff alludes to three causes of action in his brief (Doc. 30-4) opposing summary judgment. Because Plaintiff had pled only the two claims enumerated above, only those two claims are considered here.

that: (1) an employee engaged in protected activity; (2) an employer's adverse action against the employee after the employee's engagement in protected activity; and (3) a causal connection between the protected activity and the employer's adverse action. Krause v. American Sterilizer Company, 126 F.3d 494, 500 (3d. Cir. 1997). In this case, the Plaintiff has alleged that he engaged in protected activity by making verbal and written complaints to agents of his employer about racial bias affecting the way various employees were disciplined. Plaintiff also alleges the requisite adverse action - - that his employment was terminated. Finally, Plaintiff alleges that a causal connection exists between his complaints of racial bias and his termination. Thus, Plaintiff has certainly pled the necessary elements of a Title VII retaliation claim.

A prima facie case of discrimination is made out when a Plaintiff demonstrates that: (1) he was treated less favorably than other employees because of, inter alia, his race; (2) he was qualified for and satisfactorily performed his job; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. See McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802 (1973); see also Iadimarco v. Runyon, 190 F.3d 151, 163 (3d. Cir. 1999). Plaintiff has pled each of

11

these elements in that: (1) he claims that he was treated less favorably than minority employees because he is white; (2) he asserts (with affidavits of third parties attached as exhibits to his complaint) that he was qualified for and satisfactorily performed his job; (3) he suffered an adverse employment action (his termination); and (4) minority officers who committed more egregious violations of work place policy than those Plaintiff was accused of committing were not disciplined as severely thus giving rise to an inference of discrimination.

Having reviewed the pleadings, the briefs of the parties, various documents referenced in those briefs, and the competing "Statements of Fact" provided by the parties, the Court has determined that Defendants' Motion for Summary Judgment (Doc. 25) must be denied because numerous material factual issues remain in dispute which will require weighing the credibility of witnesses or determining what conclusions should be drawn from conflicting evidence. The Court cannot engage in these activities. See Anderson, supra, at 255. Such determinations are the province of a jury. Among the material factual issues that must be decided are these:

(1) Whether there is reasonable proof for the proposition that Plaintiff Rush had been smoking in his patrol vehicle on March 16, 2015 (referenced in

12

Defendants' Statement of Undisputed Facts at paragraphs 42-64 and disputed in Plaintiff's responses thereto);

(2) Whether Plaintiff Rush had engaged in a high speed chase within the Pocono community on or about August 21, 2014 which resulted in his receipt of a "Final Warning" from Defendant Cummings (referenced in Defendants' Statement of Undisputed Facts at paragraphs 25-33 and disputed in Plaintiff's responses thereto);

(3) Whether Defendant Cummings unilaterally fired Plaintiff Rush or whether Defendant Webster participated in that decision (referenced at paragraph 65 of Defendants' Statement of Undisputed Facts and disputed in Plaintiff's response thereto);

(4) The content of and time that Defendant Cummings first became aware of an email generated by Plaintiff Rush on March 20, 2015 (referenced in Defendants' Statement of Undisputed Facts at paragraphs 71-82 and disputed in Plaintiff's responses thereto); and

(5) Whether Defendant Cummings has a history of treating minority patrol officers preferentially as opposed to the manner in which he has treated caucasian

>           employees under his direction (referenced in
>           Defendants' Statement of Undisputed Facts at
>           paragraphs 83-89 and disputed in Plaintiff's
>           responses thereto).

The above enumerated disputes, singly or in combination, are material because the manner in which they are resolved will determine which party prevails in this lawsuit.

## V.  Conclusion.

It is clear to the Court that the relative credibility of Plaintiff and his witnesses as opposed to that of Defendants Cummings and Webster and such witnesses as they may call will determine the ultimate questions in this case - - whether the stated reason for Plaintiff's termination was pretextual and whether the actual reason for his termination was racial bias. Accordingly, a jury must be empaneled to answer these questions.  An Order consistent with these determinations will be filed contemporaneously.

**BY THE COURT**

>                S/Richard P. Conaboy
>                Honorable Richard P. Conaboy
>                United States District Court

Dated: June 8, 2017